IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CECIL LONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:10cv127-CSC |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq., alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act.  The ALJ, therefore, denied the plaintiff's claim for benefits.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

> To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** The plaintiff Cecil Long ("Long") was 42 years old on the date of onset (R. 21) and 44 years old at the time of the hearing before the ALJ. (R. 27). He has at least a ninth grade education. (*Id*). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "chronic obstructive pulmonary disease (COPD), status

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

post stab wound to the left shoulder with left side brachial plexus injury, degenerative joint disease of the left hand, knee pain, back pain due to osteoporosis, borderline intellectual functioning and provisional depression." (R. 12). Following the hearing, the ALJ concluded that the plaintiff could not return to his past relevant work as auto auction/sales driver, picture frame assembler, or lunchroom attendant. (R. 21). However, the ALJ concluded that there were a significant number of jobs in the national economy that the plaintiff could perform, and thus, concluded that the plaintiff is not disabled. (R. 22).

  **B. Plaintiff's Claim.**  In his brief, the plaintiff presents only one issue for the Court's review.  As stated by him, "[t]he Commissioner's decision should be reversed and a disability finding entered because Mr. Long's Mild Mental Retardation meets Listing 12.05C." (Pl's Br., doc. # 12, at 7).

## IV. Discussion

  Although the plaintiff did not allege disability due to a mental impairment, during the administrative hearing, the ALJ agreed to secure a psychological evaluation for him.  On June 10, 2009, the plaintiff was administered the Wechsler Intelligence Scale for Adults - Revised (WAIS-IV) by Dr. Marnie Smith Dillon, a licensed clinical psychologist. (R. 256-60).  He obtained a verbal comprehension scale score of 72, a perceptual reasoning scale score of 77, a working memory scale score of 74, a processing speed scale score of 65, and a full scale I.Q. score of 67. (R. 259).  Dr. Dillon opined that the plaintiff was mildly mentally retarded. (R. 256).  Based on his full scale I.Q. score, the plaintiff argues he is presumptively disabled under Listing 12.05C.

Section 12.05 of the Listing of Impairments define mental retardation as "significantly sub-average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of impairment before age 22." *See* 20 C.F.R. Subpt P, App. 1, Listing 12.05(c). In addition to this requirement, the Listings provide, in pertinent part, that a claimant is disabled if he meets the following criteria:

> § 12.05. Mental Retardation . . . The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> C. A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

Consequently, a claimant meets the strictures of 12.05C by presenting evidence of (1) a sub-average general intellectual functioning initially manifested prior to age twenty-two; (2) valid IQ score of 60 to 70 inclusive; and (3) evidence of an additional mental or physical impairment that has more than a "minimal effect" on the claimant's ability to perform basic work activities. *Lowery v. Sullivan*, 979 F.2d 835 (11th Cir. 1992); *Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir. 1985).

The ALJ concluded that Long did not satisfy these requirements primarily because Long's IQ score was not, in and of itself, determinative of mental retardation, and Long had failed to demonstrate that his mental retardation manifested before the age of 22. Based on its review of the record, the court finds that the ALJ's conclusion that Long did not satisfy the requisites of 12.05C was supported by substantial evidence because the record does not indicate that his intellectual deficiencies manifested before the age of twenty-two (22) nor

did they significantly impair his ability to work.

In this circuit, a claimant's IQ score is not conclusive evidence of a disability when it is inconsistent with other evidence of the claimant's daily activities and behavior. *See Popp v. Heckler*, 779 F.2d 1497 (11th Cir. 1986). In *Popp*, the Eleventh Circuit Court of Appeals held that the Listings for mental retardation do not require the Commissioner to make a finding of mental retardation based upon the results of an I.Q. test alone. However, the test results must be considered in context with other evidence including the daily activities and behavior of the claimant. *Id.* at 1499. If the ALJ concludes from other evidence in the record that the IQ scores are inconsistent with the claimant's actual intellectual functioning, the ALJ may properly find that the claimant does not meet the criteria of § 12.05. The ALJ's decision is reviewable by the court for substantial evidence.

Long completed some portion of high school. (R. 42). Long testified that he completed only the 9th grade; however, during two different physical consultative examinations, he told the physicians that he quit school in the 11th grade. (R. 220 & 235). Long further testified that he received special tutoring in school, but his school records do not indicate that he was in special education classes. (R. 274-76). While his grades ranged from C's to F's, Long's absences from school are notable. (R. 274). For example, in seventh grade during the first semester Long missed 36 days, and 21 days during the second semester. (*Id.*) Although Long did not pass the driving examination several times, he finally passed the test. (R. 29).

Long did not apply for, nor did he allege until the administrative hearing, disability

based on sub-average intellectual functioning. During his interview with the disability field officer on July 10, 2006, she noted that he had no difficulty reading, understanding, concentrating, talking, answering, or writing. (R. 153). He indicated that he could read, write and understand English. (R. 155). Long described his prior employment as that of a "graphic artist." (R. 156-57). He used machines, tools, and equipment, and used technical skills and knowledge. (R. 157, 170). He further indicated that he supervised three or more people, and he checked their work to ensure that it was correct.[4] (R. 170-171). Finally, two consultative examiners questioned Long's efforts. On August 25, 2006, Dr. Babb noted that Long's "[e]ffort and motivation appear to be very poor, but there is a strong element of malingering in his gait." (R. 222). On March 3, 2009, Dr. Golomb opined that Long "was very contradictory, evasive, and had a tendency to exaggerate." (R. 236). Dr. Golomb also noted that Long told him that, prior to working for the Montgomery County Board of Education, Long "did graphic art and framing of pictures for approximately 17 years, until the company closed down in 2004." (R. 235). Interestingly, during his psychological evaluation with Dr. Dillon, after being denied disability benefits twice previously, Long told her that he completed only the ninth grade and he had been enrolled in special education classes since the fifth grade. (R. 257). Dr. Dillon opined that based on his valid full scale I.Q. score of 67, Long's "level of intellectual functioning in the Mild range of Mental

---

[4] During the evidentiary hearing, Long testified that he did not supervise others and he only checked to see if the pictures were clean. The ALJ discounted Long's testimony about his past work as not credible. "In his reports of record, the claimant's description of his past work would be appropriately described as semi-skilled work. At the hearing, the claimant attempted to minimize the description of his past work." (R. 19). The plaintiff does not challenge the ALJ's credibility determination.

Retardation." (R. 258). However, Dr. Dillon further explained that

> [i]t is noted that Mr. Long's symptom presentation was rather vague, and he lacked insight into his own psychological functioning. This presentation is likely due to low cognitive functioning, but could possibly also be due to malingering. Mr. Long's reported symptoms appear legitimate; however, a conclusive diagnosis could not be determined during today's brief clinical interview. Therefore a provisional diagnosis of Depressive Disorder Not Otherwise Specified is assigned; however, Malingering should be ruled out.

(R. 258).

The ALJ concluded that Long did not meet Listing 12.05C. (R. 18).

> Post hearing I sent the claimant for a psychological consultative examination. Dr. Dillon diagnosed the claimant with mild mental retardation. While I accept the claimants' (sic) IQ scores, I do not find that the claimant exhibited deficits of adaptive functioning prior to age 22 as required by a diagnosis of mental retardation or by the social security listing of impairments. Over the course of his life, the claimant has been able to perform semi-skilled full time work for 17 years until the company closed, earning in excess of $30,000 for multiple years. Even given the mental retardation diagnosis, Dr. Dillon only documented mild symptoms in dealing with simple instructions and moderate symptoms dealing with complex instructions. Dr. Dillon also found that the claimant would not have any limitation in interacting with the public, coworkers, and supervisors along with only a mild limitation in responding to work situations or changes in the work setting. These limitations are not consistent with an individual who exhibits deficits in adaptive functioning.

(R. 18-19).

The plaintiff argues that his school records "indicate that [he] had academic problems with attending school." (Pl's Br., doc. # 12, at 8). In addition, the plaintiff argues that his testimony demonstrates that his "Mild Mental Retardation arose during the developmental period." (*Id.*) However, the ALJ discredited the plaintiff's testimony.[5] (R.19). Coupled

---

[5] The plaintiff does not challenge the ALJ's credibility determination.

with the other evidence of record, the court concludes that the ALJ's determination that Long's intellectual deficiency did not manifest itself prior to age 22 is supported by substantial evidence.

Furthermore, and perhaps more importantly, Long does not demonstrate, and the record does not indicate, that his intellectual deficiencies *significantly impaired* his ability to work.  Long conceded that he could read, write and do simple math, although he asserted that he was not a strong speller and he didn't do math well.  (R. 28).  He passed the written driving test.  (R. 29).  He worked at Eagle Art for seventeen years.  He described his work as that of a graphic artist who framed pictures.  (R. 34).  Although Long testified that he wasn't really a supervisor, (R. 35), on his work history forms, he indicated that he supervised three or more persons.  (R. 170-71).  In his disability interview, he indicated that he used technical knowledge and skills as well as machines, tools and equipment.  (R. 157).  He told Dr. Golomb that he worked at that job for seventeen years, "until the company closed down in 2004."  (R. 235).  Given this evidence, the court concludes that the ALJ's determination that Long's intellectual deficiencies did not significantly impair his ability to work, and thus, Long did not satisfy the requirements of section 12.05 was supported by substantial evidence.

Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's factual findings.  *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).  The ALJ's findings meet the reasonableness standard.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed. Thus, this case will be dismissed with prejudice.

A separate order will issue.

Done this 8th day of August, 2011.

                                              /s/Charles S. Coody
                                              CHARLES S. COODY
                                              UNITED STATES MAGISTRATE JUDGE